|, YELVERTON, J.
This appeal arises from a judgment terminating the parental rights of the Appellant, L.W., to her child, S.W. The trial court found that the mother could not support the child properly and failed to comply with the Department of Social Services’ case plan established for her. The mother appeals. For the reasons assigned, we affirm.
S.W. came into the custody of the Department of Social Services (DSS) shortly after his birth. When S.W. was born, L.W. had no bed for him, nor any of the things necessary to care for a newborn. L.W. suffers from cerebral palsy. She is wheelchair bound and has no control over the movement in her left arm and both legs. While the mother has some control over the use of her right arm, she is unable to hold objects in her hands and cannot hold her child without assistance. She is dependent upon a caregiver for all her needs. At the time of the termination hearing, L.W. was living at the home of the child’s grandmother — her mother and primary caregiver. The two slept on a mattress on the living room floor. The grandmother has a history of substance abuse and a varied criminal history, including arrests for prostitution, theft, and aggravated battery with a knife. Based on this information, the DSS felt that the child would be without adequate care and supervision if left in the care'and control of the mother; it sought to have the child removed to the custody of the DSS.
The child was placed with foster parents while an investigation was conducted. After a two-year investigation and the creation of a case plan which would allow the mother to regain custody of her child, the DSS found that the mother failed to make any “real attempts to regain custody of [her] son.” The DSS recommended termination of L.W.’s parental rights in order to free S.W. for adoption. The trial |2court agreed with the DSS and terminated the mother’s parental rights.[1] From that decision, the mother appeals.
*1202 The fundamental purpose of involuntary termination proceedings is to provide the best possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs by providing a judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. La.Ch.Code art. 1001. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. Id. State ex rel. J.A., 99-2905, pp. 7-8 (La.1/12/00), 752 So.2d 806, 810 (citations omitted), sets forth the following regarding the termination of parental rights:
In any case to involuntarily terminate parental rights, there are two private interests involved: those of the parents and those of the child. The parents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children warranting great deference and vigilant protection under the law, and due process requires that a fundamentally fair procedure be followed when the state seeks to terminate the parent-child legal relationship. However, the child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care. In balancing these interests, the courts of this state have consistently found the interest of the child to be paramount over that of the parent.
Title X of the Children’s Code governs the involuntary termination of parental rights. The grounds for the termination of the mother’s parental rights in this case are set forth by Louisiana Children’s Code Article 1015(5), which states:
ls(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.
In order to sever the parental bond, the DSS must prove that the mother failed to substantially comply with her case plan by clear and convincing evidence. La.Ch.Code art. 1035(A); Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (holding that the minimum standard of proof in termination of parental rights cases is clear and convincing evidence); State ex rel. J.A., 752 So.2d at 810. Not only must the DSS establish that statutory ground for termination, but the trial judge must also find that termination is in the best interest of the child. La.Ch.Code art. 1039.
“It is well-settled that an appellate court cannot set aside a juvenile court’s findings of fact in the absence of manifest error or unless those findings are *1203 clearly wrong.” In re A.J.F., 00-948, p. 25 (La.6/30/00), 764 So.2d 47, 61. In its review, “it is important that the appellate court not substitute its opinion when it is the juvenile court who ■ is in the unique position to see and hear the witnesses as they testify.” Id. at 62. “The trier of fact is not disadvantaged by the review of a cold record and is in a superior position to observe the nuances of demeanor evidence not revealed in a record.” Id.
In the case at hand, the record shows that the mother’s case plan set out 22 actions to be taken by her. She complied with only two, meeting with her case worker and maintaining visitation with her son. However, she failed to meet the 20 other actions required of her to regain custody of her son. These included failure to avail herself of the services of a personal care attendant from the Southwest Louisiana | ¿Independence Center, failure to provide a statement from a physician stating she is physically capable of raising the child, failure to undergo a psychological assessment, and failure to maintain clean and safe housing for the child. Thus, it is clear from the record that the mother failed to substantially comply with her case plan and that she is physically incapable of taking care of her child. Additionally, the record showed that the child was in good health and was happy in the care of the foster parents, who are hoping to adopt the child. The foster parents expressed a desire to allow L.W. to maintain a relationship with S.W. if that adoption were to occur.
While the plight of the mother is sad, it is the best interests of the child we are statutorily bound to consider as paramount. The trial court found that the mother had failed to comply with the case plan established by the DSS and that termination of L.W.’s parental rights would be in the best interest of S.W. There is no manifest error in this finding. Therefore, we must affirm the decision of the trial court.
For the reasons assigned, the judgment of the trial court is affirmed. Costs of this appeal are assessed against L.W.
AFFIRMED.

. The DSS also recommended the termination of S.W.'s father's parental rights. The *1202 trial court also found that the father had failed to comply with his case plan and terminated his rights to the child as well. The father did not appeal and is no longer part of this litigation.